710 P.2d 430

**STATE of Arizona, Appellee,**

v.

**John Tim ALLIE, Appellant.**

**No. 6233.**

Supreme Court of Arizona,
En Banc.

Nov. 15, 1985.

Robert K. Corbin, Atty. Gen. by Bruce Ferg, Asst. Atty. Gen., Tucson, for appellee.

D. Jesse Smith, Tucson, for appellant.

HAYS, Justice.

After a jury trial, defendant, John Tim Allie, was convicted of one count of burglary in the first degree, A.R.S. § 13–1508, and one count of armed robbery, A.R.S. § 13–1904. Because defendant committed these crimes while on probation, the trial court sentenced defendant to life imprisonment without possibility of parole for twenty-five years on each count, A.R.S. § 13–604.01. The sentences were to run concurrently with each other, but consecutively to the sentence reimposed upon revocation of his probation. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and –4035. We affirm.

The facts follow. On March 5, 1983, at approximately 11:45 pm, defendant and his accomplice, James Bushey, robbed a Shakey's Pizza Parlor in Tucson, Arizona. Both men wore masks. Defendant was armed with a knife and Bushey had a gun. The two men forced the employees to lie on the floor and then bound them with tape.

Defendant and his accomplice proceeded to take between $2,000 and $2,500 before fleeing the restaurant.

After several weeks of investigation, the police obtained the confession of Michael Hart, an employee working at the restaurant that night. Hart admitted that he had been the "inside man" in the robbery and had only pretended to be a victim. Hart also identified defendant and Bushey as the two men who robbed the restaurant.

Defendant raises several issues on appeal.

I. CONSTITUTIONALITY OF A.R.S. § 13–604.01

Defendant raises numerous issues regarding the constitutionality of A.R.S. § 13–604.01.

A. *Ex Post Facto*

■ Defendant claims that A.R.S. § 13–604.01,[1] in its application to the present case, violates the *ex post facto* clause of the United States Constitution, art. I, § 9. A.R.S. § 13–604.01 mandates a life sentence for a person convicted of a felony involving the use of a deadly or dangerous instrument while on probation for a felony conviction. This statute was enacted after the defendant was placed on probation, but prior to his committing the crimes herein. Defendant thus argues that application of this statute, to him, retroactively increases his sentence of probation to life imprisonment. We recently considered the same allegation and concluded that A.R.S. § 13–604.01 does not constitute an *ex post facto* law.

We recognize that the Arizona Legislature may not enact a law which imposes any additional or increased penalty provided for a crime after its commission. (Citations omitted). A.R.S. § 13–604.01, however, does not increase defendant's sentence on his *first* conviction. His probationary sentence did not become more onerous. The probationary period did not increase, the conditions of his proba-

1. A.R.S. § 13–604.01 has been renumbered A.R.S. § 13–604.02.

tion were not changed and his compliance with the conditions was not made more difficult. Additionally, no increased or additional penalty on the crime underlying his probation was imposed due to § 13–604.01 (footnote omitted). The enactment of A.R.S. § 13–604.01 in 1982 merely put defendant on notice of the consequences of any further criminal convictions. See *State v. Pendergraft*, 124 Ariz. 449, 604 P.2d 1160 (App.1979) (A.R.S. § 13–604 did not punish defendant for past conduct but merely notified him of increased punishment for future felony); *Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948) (enhanced punishment for repeat offenders, not additional penalty for earlier crime but stiffened penalty for latest crime).... We find no ex post facto violations.

*State v. Cocio*, 147 Ariz. 277, 709 P.2d 1336 (1985). Defendant has presented nothing to warrant reassessment of our position.

### B. *Equal Protection*

 Defendant also argues that A.R.S. § 13–604.01 violates his right to equal protection by mandating a life sentence for those criminals within the statute, but not imposing equal punishment upon those persons outside the scope of the statute who commit similar crimes. To accept the defendant's argument, we must find that this particular legislative classification "bears no rational relationship to a legitimate state purpose." *State v. Noriega*, 142 Ariz. 474, 487, 690 P.2d 775, 788 (1984). This court has repeatedly found otherwise:

> The legislature could rationally conclude that a felon who commits an armed offense recently after release from confinement for another felony, and in violation of the conditions of this release from confinement, has simply not been rehabilitated. ... It is also rational to protect the public by deterring felons on release from confinement from committing armed offenses.

*Id.*, *State v. Williams*, 144 Ariz. 433, 444, 698 P.2d 678, 689 (1985). Therefore, we find that the statute does not violate the basic concepts of equal protection.

### C. *Cruel and Unusual Punishment*

Defendant also maintains that his sentence constitutes cruel and unusual punishment under the eighth and fourteenth amendments to the United States Constitution. In determining whether a sentence is unconstitutionally excessive, the Supreme Court set out a four-part test in *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 3010–11, 77 L.Ed.2d 637, 649 (1983). This court must consider: (1) the gravity of the offense; (2) the harshness of the penalty; (3) the sentence imposed on others in the same jurisdiction; and (4) the sentence imposed on similarly situated defendants in other jurisdictions. *See State v. Cocio*, 147 Ariz. at 282, 709 P.2d at 1341.

It should be noted that this court recently engaged in such an analysis in two similar cases and upheld the sentence in each instance. *State v. McNair*, 141 Ariz. 475, 687 P.2d 1230 (1984); *State v. Noriega, supra.*

 First, as to the gravity of the offense, we find that defendant's crimes were sufficiently serious to warrant increased punishment. Appellant places emphasis on the fact that this was an "inside job" so that the "ordinary dangers attendant on a garden variety armed robbery were not present." Specifically, appellant claims that he and his accomplice, knowing there would be no resistance from the employees, never actually placed the victims in any danger. Furthermore, appellant claims that he carried only a knife, not a gun (his accomplice carried a gun). He maintains that since "guns are more dangerous than knives," the punishment should be less severe. We find defendant's attempt to distinguish the crime herein from a "garden variety" armed robbery unpersuasive. This court has repeatedly held that the "absence of actual injury is scarcely an accurate measure of the danger appellant poses to society." *State v. Noriega*, 142 Ariz. at 487, 690 P.2d at 788. Even though no physical injuries were suf-

fered and defendant claims the victims were in no actual danger, we cannot foresee how he would have reacted had any of the victims refused to cooperate. Defendant's threatening conduct could very easily have led to serious injury or death. *State v. Garcia*, 141 Ariz. 97, 100, 685 P.2d 734, 737 (1984). As to defendant's assertion that his use of a knife as opposed to a gun should somehow affect his sentence, this court has held such a distinction to be irrelevant. *State v. Williams*, 144 Ariz. at 445, 698 P.2d at 690.

Second, the sentence imposed upon defendant is not unconstitutionally harsh. Where there is a legislatively prescribed penalty, we do not determine whether it is fair in our eyes; rather, we need only consider if it violates the eighth amendment as being unduly harsh. *State v. Garcia*, 141 Ariz. at 100, 685 P.2d at 737. In both *McNair* and *Noriega, supra,* we did not find the life sentences imposed to be excessive where both defendants were repeat offenders convicted of dangerous crimes while on probation. These same factors are present here. Defendant was convicted of armed robbery and burglary and was on probation from two prior felony convictions at the time he committed the crimes herein.

Third, we compare defendant's sentence to those for other or similar crimes in this jurisdiction. Life sentences imposed under A.R.S. § 13–604.01 have consistently survived eighth amendment scrutiny in Arizona. *E.g., Cocio, supra,* and cases cited therein. We see no reason to repeat the analysis found in these cases. We conclude that defendant's sentence is not disproportionate in comparison to other sentences for similar crimes in Arizona.

Fourth, defendant's sentence is proportional to sentences imposed on similarly situated criminals in other jurisdictions. For example, a *first* conviction for armed robbery may result in a six to forty year sentence in Arkansas (Ark.Stat.Ann. § 41–2102, 41–901); thirty years to life in Florida (Fla.Stat.Ann. §§ 775.082, 812.13); ten to thirty years, or life in Missouri (Mo.Rev. Stat. § 558.011, 569.020); ten years to life in Tennessee (Tenn.Code Ann. § 39–2–501); and five to ninety-nine years or life in Texas (Tex.Penal Code Ann. § 29.03, 12.32). These statutes do not take into account the existence of prior convictions or the fact that a defendant was on probation at the time he committed the offense. Thus, we find that defendant's sentence is not disproportionate to what he might have received in another jurisdiction.

■ Finally, defendant raises two other points in connection with his eighth amendment argument. First, defendant maintains that A.R.S. § 13–604.01 punishes him because of his probationary status, and therefore constitutes cruel and unusual punishment in violation of *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). In *Robinson*, the United States Supreme Court held that a state law punishing a person solely because he was a narcotics addict was unconstitutional. Previously, this court has distinguished *Robinson* from cases where "status" arguments were made by prisoners after receiving an enhanced sentence for committing assaults while in prison. *State v. Fears*, 126 Ariz. 597, 598, 617 P.2d 763, 764 (1980); *State v. Barnett*, 127 Ariz. 16, 17, 617 P.2d 1132, 1133 (1980). We see no distinction here and therefore defendant's argument fails. It is not defendant's probationary status that enhances his punishment but rather it is his commission of a felony subsequent to his release from a prior conviction.

■ Second, defendant urges that the portion of A.R.S. § 13–604.01 which mandates that his sentence run consecutively to the sentence reinstated upon his probation revocation, does not apply to him. Defendant bases his argument on the last sentence of § 13–604.01: "A sentence imposed pursuant to this subsection shall revoke the convicted person's release and shall be consecutive to any other sentence from which the convicted person had been *temporarily released*." (Emphasis added). Defendant maintains that this eliminates probationers, as probation is not a "temporary release."

Although this portion of the statute may be loosely worded, we have held that there is "no distinction between probation and parole for purposes of A.R.S. § 13-604.01." *State v. Williams,* 144 Ariz. at 445, 698 P.2d at 690. We find that appellant's sentence violates neither the eighth nor the fourteenth amendment to the United States Constitution.

### D. *Separation of Powers, Bill of Attainder, Right to Allocution*

Defendant next claims that since A.R.S. § 13-604.01 removes the trial court's discretion in sentencing, it: (1) violates the separation of powers doctrine; (2) constitutes a bill of attainder in violation of article I, section 10 of the United States Constitution; and (3) violates the right to allocution.

■ First, in *State v. Faunt,* 139 Ariz. 111, 113, 677 P.2d 274, 276, (1984) this court specifically held that A.R.S. § 13-604.01 does not violate separation of powers. We see no reason to reject this holding now.

■ Second, A.R.S. § 13-604.01 does not constitute a bill of attainder in violation of the United States Constitution. Traditionally, a bill of attainder encompassed legislative acts which inflicted punishment without a judicial trial. *State v. Greenawalt,* 128 Ariz. 150, 174, 624 P.2d 828, 852 (1981). The prohibition against bills of attainder was intended as "an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, or more simply—trial by legislature." *United States v. Brown,* 381 U.S. 437, 442, 85 S.Ct. 1707, 1711, 14 L.Ed.2d 484, 488 (1965). This court has previously held that the definition of crimes and their punishments is a proper legislative function. *State v. Marquez,* 127 Ariz. 98, 103, 618 P.2d 592, 597 (1980). As such, the mandatory sentencing provision of A.R.S. § 13-604.01 does not unconstitutionally infringe upon the judiciary's discretionary power. Thus, none of the dangers identified with a traditional bill of attainder are present. Additionally, no person is sen-

tenced under A.R.S. § 13-604.01 until he has undergone a full judicial trial with all the due process rights afforded him by the federal constitution. The defendant was not *convicted* by legislative act. Rather, he was simply *sentenced* by legislative mandate.

■ Third, defendant maintains that the life sentence dictated by A.R.S. § 13-604.01 violates his constitutional right to individualized treatment in sentencing. He claims that since the trial judge cannot exercise his discretion to mitigate the sentence, his right to make a statement before sentencing—the right to allocution—is therefore a meaningless right. We disagree. Rule 26.10(b)(1), Rules of Criminal Procedure, 17 A.R.S., provides that a defendant shall have an opportunity to speak on his own behalf before sentence is pronounced. *See also State v. Nelson,* 122 Ariz. 1, 592 P.2d 1267 (1979). We recognize three purposes for allowing a defendant to speak prior to sentencing. First, the defendant may state any reason why sentence should not be pronounced against him. *Lee v. State,* 27 Ariz. 52, 67, 229 P. 939, 943 (1924); 21 Am.Jur.2d *Criminal Law* § 531 (1981); second, the defendant has an opportunity to make any personal comments to the court, the victim, or anyone else he so chooses; and third, the defendant can present mitigating evidence to appeal to the judge's discretion. *State v. Nelson,* 122 Ariz. at 2, 592 P.2d at 1268. The first two purposes were clearly fulfilled. Defendant's counsel argued extensively that defendant could not constitutionally be sentenced under A.R.S. § 13-604.01. Moreover, when asked by the court, defendant himself said he had nothing further to say on his behalf. Defendant however takes issue with the third purpose, the ability to appeal to the judge's discretion. We find there is no violation. As we stated above, the elimination of judicial discretion in sentencing under A.R.S. § 13-604.01 is not unconstitutional. Hence, the limited effect of defendant's statement before the court does not constitute a violation of defendant's right to allocution.

## F. *Contract Clause*

Defendant's final attack on the constitutionality of § 13–604.01 is that its application, in this case, violates article I, section 10 of the United States Constitution, which prohibits a state from passing any law which impairs the obligation of contracts. In 1981 defendant entered into a plea agreement (the contract) concerning two prior felony offenses. He claims that the subsequent enactment of § 13–604.01 impaired this contract by increasing the potential sentence for a probation revocation to life. We disagree.

■ Rule 17.2(b), Rules of Criminal Procedure, 17 A.R.S., states that before accepting a guilty plea, a defendant must be informed of "any special conditions regarding sentence, parole, or commutation imposed by statute." In other words, a defendant cannot voluntarily waive a constitutional right until he is made aware of it. *State v. Young,* 106 Ariz. 589, 590–91, 480 P.2d 345, 346–47 (1971). *See also Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In determining whether a waiver was voluntarily made, this court has said:

> There is a limit as to the range of consequences that follows from a plea of guilty that must be told to the defendant at the time of the plea. Defendant need only be told the immediate consequences of his plea. The court need not assume that defendant is contemplating a later murder when the plea of guilty is entered so as to require that he tell him if he does commit the murder the felony to which he is pleading guilty could cause the death penalty to be imposed.

*State v. Watson,* 120 Ariz. 441, 448, 586 P.2d 1253, 1260, *cert. denied,* 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979). The same is true for § 13–604.01. The possibility of receiving a life sentence for an offense committed while on probation is not a "special condition regarding sentence" that must be disclosed to defendant, under Rule 17.2(b), at the time of the plea.

We find no constitutional infirmities in A.R.S. § 13–604.01 as applied to this defendant.

## II. JURY INSTRUCTIONS

The trial court, in *voir dire* of the jury and its final instructions, stated that the jury should not consider punishment, as sentencing is a matter left solely to the trial court's discretion. Defendant complains that since this case involved a mandatory sentence, and not a discretionary one, the effect of the statement was to lull the jurors into convicting the defendant on weak evidence in the expectation that the court would then impose a light sentence.

Defendant raises this issue for the first time on appeal. Thus, any error concerning the instruction is waived absent a finding of fundamental error. *State v. Grilz,* 136 Ariz. 450, 454, 666 P.2d 1059, 1063 (1983). We find no such fundamental error.

In Arizona, the trial court, not the jury, determines matters of punishment. The jury's function is to determine the guilt or innocence of a party without consideration of the possible sentence. *State v. Tims,* 143 Ariz. 196, 198, 693 P.2d 333, 335 (1985). Where an instruction merely advises the jury not to consider the possible punishment and neither directly nor indirectly suggests that defendant, if convicted, would be treated with leniency, there is no significant danger of prejudice. *State v. Koch,* 138 Ariz. 99, 105, 673 P.2d 297, 303 (1983).

■ In the instant case, the court's instruction only advised the jury not to consider the possible sentence. The court neither told the jury the range of sentences available nor suggested that he would impose a light sentence if defendant were convicted. Furthermore, there is no indication that the instruction induced the jury to reach a compromise verdict. Likewise, we find no merit in defendant's argument that the instruction implied that a "right of jury nullification," or right to acquit a defendant regardless of the facts or law, would be exercised by the court through its sentenc-

ing discretion. We find that defendant was not prejudiced by the court's instruction.

## III. IMPEACHMENT BY PRIOR CONVICTION

After conducting a pretrial hearing on this issue, the trial court ruled that defendant's two prior felony convictions would be admissible to impeach him if he took the stand on his own behalf. Defendant therefore chose not to testify. He claims that his right to testify outweighs the possible probative value of admitting his prior convictions, especially when combined with the risk that the jury would not respond to a limiting instruction. For these reasons, defendant urges this court to adopt the rule in *State v. Santiago*, 53 Hawaii 254, 492 P.2d 657 (1971), and altogether preclude impeachment of a defendant with his prior convictions. We need not reach this issue as we find the defendant did not properly preserve it for appeal.

In *State v. Barker*, 94 Ariz. 383, 386, 385 P.2d 516, 518 (1963), this court held that a defendant who did not testify at trial could not challenge an adverse pretrial ruling allowing a prior conviction to be admitted. This court said:

> The State argues that there is nothing before this Court on which to predicate a reversal of the trial court, that having received this adverse ruling appellant should have proceeded with his case by taking the stand then raising the question if the State attempted to establish the prior conviction....
>
> A trial judge cannot be compelled to rule on a motion in advance of the submission to him of all of the pertinent facts which may be later developed. A defendant's rights are fully protected by this procedure.

*Id.* Although this rule is well settled in Arizona, we proceed further in order to clear up some confusion that has arisen in the lower courts concerning this issue.

■ In *State v. Ellerson*, 125 Ariz. 249, 609 P.2d 64 (1980), *overruled on other grounds, State v. Fettis*, 136 Ariz. 58, 664 P.2d 208 (1983), and *State v. Noble*, 126 Ariz. 41, 612 P.2d 497 (1980), this court was presented with a variation on the *Barker* rule. In both cases the trial court denied defendant's motion to preclude use of his prior convictions for impeachment purposes. Thereafter, each defendant attempted to minimize the effect of this ruling by taking the stand and admitting the prior convictions. The issue then became whether defendant, by "drawing the sting" on direct examination, waived his right to appeal the prior ruling. We held that there was no waiver. *State v. Ellerson*, 125 Ariz. at 251, 609 P.2d at 66; *State v. Noble*, 126 Ariz. at 42, 612 P.2d at 498. In doing so, we adopted the rationale of *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979), *cert. denied*, 144 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980), that a defendant should not lose his right to appeal solely because he altered his trial strategy after receiving an adverse ruling on a pretrial motion. *Id.* Our adoption of the Ninth Circuit's logic was limited to the facts before us. Neither *Ellerson* nor *Noble* dealt with the proposition that a defendant can alter his trial strategy *by not taking the stand* and still preserving his right to appeal. Those courts which have mistakenly relied on them for that purpose have extended the holdings past their intended meaning. *See, e.g., State v. Wilson*, 128 Ariz. 422, 626 P.2d 152 (App.1981). The intent of this court in those cases was to hold that a defendant *who takes the stand* can "draw the sting" of prior convictions without waiving his right to appeal. Thus, the rule in Arizona remains that a defendant must take the stand before he can challenge an adverse pretrial ruling allowing prior convictions to be admitted for impeachment purposes.

Our holding today is similar to that in *Luce v. United States*, 469 U.S. ——, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). Thus, defendant did not properly preserve the matter of impeachment for appeal.

## IV. FAILURE OF DEFENDANT TO TESTIFY

■ Defendant argues that the trial court failed to establish on the record that

defendant waived his right to testify. Relying on *People v. Curtis*, —— Colo. ——, 681 P.2d 504 (1984), defendant claims that when a defendant waives his right to testify, the trial court has a duty to inquire *sua sponte* whether he fully understands his right to testify, even as against his counsel's advice. He maintains that the failure to inquire constitutes fundamental error. We disagree.

It is well established that in a criminal prosecution an accused has the right to testify in his own behalf. Ariz. Const. art. 2, § 24; *State v. Tillery*, 107 Ariz. 34, 37, 481 P.2d 271, 274 (1971). However, that right is subject to defendant's making his desire to testify known at trial, not as an afterthought. *State v. Martin*, 102 Ariz. 142, 147, 426 P.2d 639, 644 (1967).

In the instant case, defendant's counsel deemed it best to keep defendant off the witness stand. There is no evidence in the record or in his brief that defendant desired otherwise. Had he wanted to testify, defendant had several opportunities to make this known to the court. *State v. Tillery*, 107 Ariz. at 37, 481 P.2d at 274, *cert. denied*, 404 U.S. 847, 92 S.Ct. 151, 30 L.Ed.2d 84 (1971). Thus, a *sua sponte* inquiry by the trial court as to whether a defendant desires to testify is neither necessary nor appropriate. Accordingly, we find that defendant, not having made his objection known at trial, cannot now be heard to complain.

## V. OTHER ISSUES

Defendant finally raises two other issues on appeal. First, defendant claims that on two occasions the prosecutor improperly made himself an unsworn witness, thereby denying defendant a fair trial. The first instance occurred during the redirect examination of witness Michael Hart, the "inside man" in the robbery. Defendant claims that the prosecutor improperly sought to elicit testimony from Hart that the prosecutor had made no promises to Hart concerning whether or not he was still subject to prosecution for his role in the robbery.

■ Defendant failed to object to these questions below and therefore has waived this issue absent a finding of fundamental error. *State v. Thomas*, 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (1981). We find no such error. The purpose of the prosecutor's questions was to rehabilitate Hart's credibility after it had been attacked on cross-examination. Defendant's claim that by doing so, the prosecutor put his own credibility at issue is without merit. Thus, we find the prosecutor's questions proper.

The second instance in which defendant alleges that the prosecutor improperly became a witness occurred during closing arguments. In his argument, the prosecutor asked the jurors to estimate mentally the prosecutor's height. He then told the jurors his true height, attempting to demonstrate how estimates can differ from reality. The purpose of this argument was to rebut defense claims that inconsistencies in estimates of defendant's height by state witnesses rendered their testimony unreliable.

■ Defendant relies on *State v. Williams*, 136 Ariz. 52, 664 P.2d 202 (1983), for the proposition that prosecutors may not become witnesses in cases they are prosecuting. We find that *Williams* is inapposite here. In *Williams*, this court warned that attorneys should be careful not to prosecute cases in which they may be a material witness on some issue. *State v. Williams*, 136 Ariz. at 57, 664 P.2d at 207. We noted that the usual cases concern attorneys testifying to the admissibility of a confession or the testimony of a defendant. *Id.* In the instant case, we do not believe that the prosecutor's statement regarding his height made him a material witness in the case. Nor do we find that the trial court abused its discretion in determining that there was no prejudicial effect.

Finally, defendant claims that three references to drug and alcohol use were made despite the trial court's prior ruling on a motion *in limine*. Defendant asserts that the court's denial of his motion for a mistrial on each occasion was an abuse of discretion. Before we consider the merits

of defendant's claims, it is necessary to examine the motion *in limine*. During a pretrial motion, defendant's counsel requested that any reference to defendant's alcohol or drug usage be excluded as immaterial and irrelevant. In granting defendant's motion, the trial court asked the prosecutor not to ask questions that would elicit this type of information. The trial court also warned defendant's counsel he could not impeach the state's witnesses concerning their drug usage without expecting some of it to "rub off" on his client.

▮ Defendant's first claim is that during *voir dire* the trial court erred when it told prospective jurors that evidence concerning drug and alcohol abuse by persons involved might surface. Defendant asserts that this reference to drug usage was improper. This court has stated that in conducting *voir dire*, the trial court may outline the nature of the case and ask prospective jurors any questions necessary to test their qualifications. Rule 18.5, Rules of Criminal Procedure, 17 A.R.S.; *State v. McMurtrey*, 136 Ariz. 93, 99, 664 P.2d 637, 643, *cert. denied*, 464 U.S. 858, 104 S.Ct. 180, 78 L.Ed.2d 161 (1983). The extent of *voir dire* is left to the discretion of the trial court and will not be disturbed unless it is plainly abused. *Id.* We believe the trial court's statement was a proper means of determining whether evidence of drug or alcohol usage would create a problem for a prospective juror and therefore require exclusion from the panel. Thus, we find no abuse of discretion.

Second, defendant complains that the prosecutor, during his opening statement, remarked that "a good time was had by all" at a party following the robbery. Defendant claims that this statement, plus a later reference to drug usage by state witnesses, implied to the jury that defendant was also using drugs. Defendant claims that the trial court should have granted a mistrial at this point.

▮ The decision to grant a mistrial is left to the sound discretion of the trial court and, absent an abuse of discretion, its ruling will not be reversed. *State v. Chris-*

*tensen*, 129 Ariz. 32, 38, 628 P.2d 580, 586 (1981). In the instant case, the prosecutor's statements were not so closely connected with the defendant as to result in a material impact on the jury. Defendant did not request a curative instruction, and we find no error in the failure to grant a mistrial.

Finally, defendant alleges that the testimony of Louis Cunningham concerning his own drug and alcohol use again implied that defendant was also using these substances.

It is well settled that the failure to object to testimony at trial waives the issue on appeal. *State v. Thomas*, 130 Ariz. at 435, 636 P.2d at 1217. Thus, by failing to make a timely objection, defendant has again waived this issue absent fundamental error. *Id.*

▮ We find no fundamental error. As before, the connection between Cunningham's testimony and the defendant's use or nonuse of drugs and alcohol is tenuous. Contrary to defendant's position, we believe that any inferences drawn by the jury would not be so prejudicial as to deny defendant a fair trial.

## VI. RULE 32

In addition to the issues raised on direct appeal, defendant filed a petition for post-conviction relief claiming a double jeopardy violation.

After waiving his right to a jury trial on the prior convictions, defendant admitted to the court that he was on probation for two prior felony convictions at the time he committed the offenses herein. The court made the appropriate finding and imposed a mandatory life sentence on each count as required by A.R.S. § 13–604.01(A). Defendant was not told by the court at the time of his admission that the mandatory life sentences would run consecutively to the sentence reinstated upon his probation revocation. Therefore, defendant claims that his waiver of a trial by court or jury on the prior convictions was defective and there was no basis for the court's finding

that A.R.S. § 13–604.01(A) was applicable. Subsequently, at defendant's Rule 32 hearing, the court found that the presentence report also showed that defendant was on probation for the two prior convictions. Defendant claims that this second finding constituted a double jeopardy violation. We disagree.

█ We do not reach the issue of double jeopardy as we find that defendant's admissions were not defective. When a trial court accepts a guilty plea, this court has held that the possibility of receiving consecutive sentences is not a special condition of sentencing that must be told to the defendant at the time of the plea. *State v. Denney,* 130 Ariz. 128, 130, 634 P.2d 579, 581 (1981). The defendant must be presumed to be aware of the obvious consequences of separate punishments for separate crimes. *State v. Gordon,* 125 Ariz. 425, 427, 610 P.2d 59, 61 (1980). We find that the same logic applies where a defendant admits to being on probation for purposes of A.R.S. § 13–604.01(A). Here, the defendant was informed that the sentences for the burglary and armed robbery convictions would run concurrently to each other. He had no reason to believe that they would not also run consecutively to the sentence reinstated for his probation revocation. When defendant's probationary sentence is being reinstated and he is also receiving sentences for subsequent convictions, we see no purpose in requiring the trial court to advise defendant that the sentences could run consecutively.

As the trial court's determination that defendant was on probation at the time he committed the present offenses was supported by reasonable evidence in the record, we find that application of A.R.S. § 13–604.01 was proper. *State v. Turner,* 141 Ariz. 470, 687 P.2d 1225 (1984). Defendant's double jeopardy claim is without merit.

We have reviewed the record for fundamental error and have found none. A.R.S. § 13–4035.

The judgment and sentences are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON, J., concur.

FELDMAN, Justice, specially concurring,

I concur in the result and with all portions of the opinion except that pertaining to the application of A.R.S. § 13–604.01(A). My views on that statute and its application are set forth in my special concurrence in *State v. McNair,* 141 Ariz. 475, 687 P.2d 1230 (1984) and my dissent in *State v. Garcia,* 141 Ariz. 97, 685 P.2d 734 (1984).